IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IHC HEALTH SERVICE, INC., d/b/a PRIMARY CHILDREN'S MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>MERITAIN HEALTH, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-861<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

On October 1, 2019, Plaintiff IHC Health Services, Inc., d/b/a Primary Children's Medical Center, sued Defendant Meritain Health, Inc., in state court, asserting claims for breach of contract and unjust enrichment. *See* Dkt. No. 2-1. Meritain removed the suit to this court. *See* Dkt. No. 2. Both parties now move for summary judgment. *See* Dkt. Nos. 19, 20. The court grants IHC's motion and grants in part and denies in part Meritain's motion.

## I.

On January 1, 2007, Plaintiff IHC entered into a Memorandum of Understanding with Aetna Health Management, LLC, and its affiliates. *See* Dkt. No. 20-1 at 4–27. The MOU established discounted rates for medical services provided by IHC facilities to members and enrollees of Aetna and its affiliates. *See id*. From October 15–18, 2013, N.E. received medical treatment at IHC's Primary Children's Hospital. *See* Dkt. No. 20-1 at 223. At the time of the treatment, N.E. was a beneficiary of a health insurance plan administered by Defendant Meritain. *See id*; Dkt. No. 19-1 at 3. At that time, and at all relevant times thereafter, Meritain was a subsidiary of Aetna. *See* Dkt. No. 38-1 at 49, 101, 155. But Meritain never paid for N.E.'s

treatment, instead asserting that IHC had failed to itemize N.E.'s medical expenses in a proper and timely manner. *See* Dkt. No. 20-1 at 235–39. IHC sues to recover the cost of N.E.'s treatment. *See* Dkt. No. 2-1.

Both parties move for summary judgment. IHC seeks summary judgment in its favor on its breach of contract claim. *See* Dkt. No. 20. Meritain seeks summary judgment in its favor on both of IHC's claims. *See* Dkt. No. 19.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if it "might affect the outcome of the suit under the governing law"; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When deciding a summary judgment motion, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. This includes evidence "that is contradicted and impeached" and "evidence that comes from interested witnesses." *Id.* (cleaned up).

"When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt v. Utah*, 539 F.3d

1271, 1280 (10th Cir. 2008). Under such circumstances, "[t]he moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (citation omitted).

But "if the moving party has the burden of proof, a more stringent summary judgment standard applies." *Id.* In this situation, "to obtain summary judgment, [the moving party] cannot force the nonmoving party to come forward with 'specific facts showing there [is] a genuine issue for trial' merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact." *Id.* (quotation omitted). "Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

### III.

The court first addresses Meritain's argument that IHC's claims are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. The court rejects this argument.

> Congress enacted ERISA to
>
> protect . . . participants in employee benefits plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1001(b)). To "eliminate the threat of conflicting or inconsistent State and local regulation of employee benefit plans," *id.* at 46 (cleaned up), Congress provided that, subject to specific enumerated exceptions,

3

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, 29 U.S.C. § 1144(a).

As the Supreme Court has explained, "Congress used the words 'relate to'" in this provision "in their broad sense," preempting any state law that "has a connection with or reference to" an ERISA benefits plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97–98 (1983). Indeed, this provision has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim.'" *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

Nevertheless, ERISA does not preempt state law actions that relate to an ERISA benefits plan only in a "tenuous, remote, or peripheral" way. *Shaw*, 463 U.S. at 100 n. 21. It follows that state law claims that do "not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries as such, are not preempted by ERISA." *Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) (cleaned up).

In *Hospice of Metro Denver*, the Tenth Circuit thus held that an "action brought by a health care provider to recover promised payment from an insurance carrier" was not preempted. *Id*. The court explained that such an action was "distinct from" more typical ERISA actions, such as those between plan participants and their insurers. *Id.* Although the complaint did specifically reference an ERISA plan, the plaintiff did not claim rights under the plan, allege a breach of the plan contract, or seek to "enforce or modify" the terms of the plan. *Id.* at 754. For those reasons, and because "[d]enying a third-party provider a state law action based upon misrepresentation by the plan's insurer in no way furthers the purposes of ERISA," the court determined that a

conclusion that the state law action was preempted "would stretch the 'connected with or related to' standard too far." *Id.* at 756.

Here also, IHC's action does not "not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries as such." IHC does not claim rights under an ERISA plan, allege a breach of an ERISA plan contract, or seek to "enforce or modify" the terms of such a plan. The court concludes that under these circumstances, as in *Hospice of Metro Denver*, holding that IHC's action is preempted "would stretch the 'connected with or related to' standard too far."

## IV.

The court will next address IHC's claim for breach of contract. Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001), *overruled on other grounds by A.S. v. R.S.*, 416 P.3d 465 (Utah 2017).[1] The court concludes that IHC has identified undisputed evidence establishing all of these elements and is thus entitled to summary judgment on this claim.

## A.

To satisfy the first element, the existence of a valid contract, IHC must establish "offer and acceptance, competent parties, and consideration." *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985). The court concludes that IHC has done so here.

---

[1] Both parties appear to assume that this contract is governed by Utah law. The court accepts that assumption.

**1.**

IHC has included a copy of the MOU in its appendix. *See* Dkt. No. 20-1 at 4–221. It is evident from the face of the MOU that IHC offered to provide medical services to the members and enrollees of Aetna and its affiliates in exchange for payment at discounted rates set forth in the MOU. *See id.* at 5–221. Authorized representatives from IHC and Aetna signed the MOU, indicating their mutual acceptance of the agreement. *See id.* at 11. All of this amply establishes offer, acceptance, and consideration. And there can be no genuine dispute that the parties to the MOU were legally competent to enter into a binding contract.

To be sure, Meritain maintains that the MOU is not a binding contract but simply a preliminary agreement. Meritain relies on language in the MOU stating that although the parties "have reached agreement regarding the rates of compensation for covered services," they "have not yet finished all details necessary to document their new contractual relationship" and thus "agree[d] to negotiate in good faith new contracts." Dkt. No. 20-1 at 5–6.

But the parties do not appear in fact to have executed more detailed or formal "document[ation]" of their new contractual relationship." And it is well settled that "a binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced." *LD III, LLC v. BBRD, LC*, 221 P.3d 867, 872 (Utah 2009) (cleaned up). Here, the MOU itself provides clear evidence of "a meeting of the minds as to the integral features of the agreement," and the court has little difficulty concluding that the terms of the MOU are "sufficiently definite" to be enforced.

In addition, the MOU expressly provides an "effective date," Dkt. No. 20-1 at 5, the parties have frequently amended the MOU, *see id.* at 28–221, and the parties have acted in

accordance with the terms of the MOU. Indeed, Meritain repeatedly invoked Aetna's "provider discount" in the combined explanation of benefits it sent IHC for the services IHC provided to N.E. and a number of other individuals, *see id.* at 223–30, and nothing in the record could support speculation that there was any basis for such a discount other than the MOU. All of this leaves no doubt that the parties have treated the MOU as binding. For all of these reasons, the court concludes that undisputed evidence establishes that the MOU was a binding contract between IHC, on the one hand, and Aetna and its affiliates, on the other hand.

## 2.

Meritain argues that even if the MOU constitutes a binding contract between IHC and Aetna, Meritain is not a party to that contract. This argument requires the court to interpret the MOU. Under Utah law, the court must begin this inquiry by identifying the intentions of the contracting parties as expressed in the four corners of the agreement. *See Central Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002). "Only where [a] contract is ambiguous will [the court] look to extrinsic evidence to interpret a contract." *Layton City v. Stevenson*, 337 P.3d 242, 248 (Utah 2014). Such extrinsic evidence may include, among other things, evidence from the course of dealings between the parties in conflict. *See Rossi v. Univ. of Utah*, 496 P.3d 105, 113 (Utah 2021); RESTATEMENT (SECOND) OF CONTRACTS § 4(a) (Am. L. Inst. 1981).

The opening paragraph of the MOU states that it is

> by and between Aetna Health Management, LLC, a Delaware Limited Liability company on behalf of itself and its affiliates as listed in Attachment D of this MOU (collectively referred to as "COMPANY"), and IHC Health Services, Inc., a Utah nonprofit corporation, doing business as all of the facilities, agencies, and services listed in Attachments A and B of this MOU (collectively referred to as "PROVIDER") . . . .

Dkt. No. 20-1 at 5. Attachment D, in turn, provides as follows:

> The following COMPANY affiliates are any corporation, partnership or other legal entity directly or indirectly owned or controlled by, or which own or

> controls, or which is under common ownership or control with COMPANY. The
> affiliates listed below are those that COMPANY is aware of as of the effective
> date of the MOU that are currently marketing and/or selling membership in Utah.
> The list is provided for information purposes only, and may be amended from
> time to time. Updates to this list will be made available to PROVIDER upon
> request.

*Id*. at 25. The attachment then provides a list of entities that does not include Meritain, and the

record contains no evidence indicating whether Attachment D was ever amended or whether the

list was updated.

The court concludes that these provisions are patently ambiguous in identifying which

entities are subject to the MOU. On the one hand, the opening paragraph defines "Aetna" to

include its "affiliates" and appears to contemplate that Attachment D will provide a specific and

complete list of these affiliates. On the other hand, Attachment D appears to identify Aetna's

affiliates more by definition than by enumeration. And although Attachment D does ultimately

provide a list, this list appears to be illustrative and informational rather than comprehensive and

definitive. Indeed, Attachment D purports to list only those affiliates operating in Utah "that

[Aetna] is aware of" as of the date the MOU was executed and to indicate that "[t]he list is

provided for information purposes only" and may be amended without notice. *Id*. at 25.

It is thus unclear from the cotractual language whether Meritain is an affiliate of Aetna

for purposes of the MOU. For although Meritain is not among the entities *actually listed* in

Attachment D, it does fall within the *definition* of Aetna affiliates contained in that attachment.

Undisputed evidence establishes that Meritain is a subsidiary of Aetna. *See* Dkt. No. 38 at 22, 49,

72, 101, 124, 155. Meritain is thus a "corporation, partnership or other legal entity directly or

indirectly owned or controlled by, or which own[s] or controls, or which is under common

ownership or control with COMPANY." Dkt. No. 20-1 at 25.

8

Given that the language of the MOU is ambiguous, the court must look to extrinsic evidence, including evidence of the parties' course of dealing. IHC has submitted the combined explanation of benefits that it received from Meritain for the services IHC provided to N.E. and a number of other individuals. *See id*. at 223–30. In this document, Meritain repeatedly invokes the "provider discount through Aetna PPO," *id*. at 225, 226, 228, 229, unequivocally holding itself out as eligible to claim a discount available to Aetna. In addition, as already noted, nothing in the record could support speculation that there was any basis for such a discount other than the MOU. The explanation of benefits thus leaves no doubt that, whatever its current position in this litigation, Meritain understood itself to be an Aetna affiliate entitled to the benefits of the MOU at the time it administered N.E.'s claim.

Meritain identifies no evidence that creates a genuine dispute of material fact regarding the parties' course of dealing. To be sure, Meritain has submitted a declaration in which Jenni A. Losel, Meritain's Director of Legal Affairs and Contracts, states that she has researched "Meritain's provider contracts and [has] found no contract between Meritain and IHC in existence as of 2013." Dkt. No. 19-1 at 3. To the extent this declaration simply reflects Meritain's *legal* position that the MOU is not a binding contract, it does not create a *factual* dispute and the court rejects Meritain's characterization of the MOU for the reasons already discussed. And even if the declaration can be read to mean that Ms. Losel could not locate a copy of the MOU in Meritain's files, the court concludes that this does not suffice to create a genuine dispute of material fact regarding the existence or meaning of the MOU.

**B.**

The remaining elements of IHC's claim for breach of contract require little analysis. Uncontested evidence establishes that IHC performed its duties under the contract by providing medical services to N.E. *See* Dkt. No. 20-1 at 223.[2]

Uncontested evidence also establishes that Meritain failed to pay for these services within 30 days of receiving IHC's bill. *See id.* at 235–39. This constitutes a breach of paragraph 10 of the MOU, which generally requires Aetna and its affiliates to "pay claims for covered services within thirty (30) days from the date of receipt." *Id.* at 20-1 at 8.

Finally, uncontested evidence establishes that IHC billed Meritain $87,205.94 for the services it provided N.E. *See id.* at 223. Applying the MOU discount in effect when these services were provided, Meritain was required to pay 89.6% of that amount. *See id.* at 213. It is undisputed that Meritain never paid for these services. IHC has thus established that it suffered damages of $78,136.52 as a result of Meritain's breach.

**V.**

Finally, the court addresses IHC's claim for unjust enrichment. It is well settled in Utah law that "a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue." *Ashby v. Ashby*, 227 P.3d 246, 250 (Utah 2010); *see also AGTC Inc. v. CoBon Energy LLC*, 447 P.3d 123, 129–30 (Utah 2019); *U.S. Fid. v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012). Because IHC has demonstrated the existence of a binding contract governing the dispute here, this claim necessarily fails.

---

[2] Meritain refused to pay IHC's claim on the ground that a proper itemization was not provided within 365 days of treatment. *See* Dkt. No. 20-1 at 235–39. The MOU, however, does not appear to require the sort of detailed itemization demanded here. *See id.* at 8–9.

                              *      *      *

      For the foregoing reasons, IHC's motion for summary judgment is **GRANTED**.

Meritain's motion for summary judgment is **GRANTED** with respect to IHC's claim for unjust

enrichment and **DENIED** with respect to IHC's claim for breach of contract. Judgment will be

entered for IHC on its breach of contract claim in the amount of $78,136.52 plus prejudgment

interest. *See* Utah Code Ann. § 15-1-1(2); *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171,

177 (Utah Ct. App. 1993).[3] No later than May 4, 2022, the parties shall file a status report

calculating the amount of prejudgment interest due. If the parties disagree, the status report shall

set forth each party's position regarding the amount of such interest due and the calculations and

legal authority supporting that position.

      **IT IS SO ORDERED**.

                            Dated this 20th day of April, 2022.
                            BY THE COURT:

                            _____
                            Howard C. Nielson, Jr.
                            United States District Judge

---

[3] IHC also requests an award of its attorneys' fees under Utah Code Ann. § 78B-5-826. But this statute allows such an award only if authorized by a contract between the parties. Here the MOU does not address attorneys' fees. The court accordingly denies this request.